HOLMES et al. v. CAMP et al. (No. 7553.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. CORPORATIONS ⬳320—ACTIONS—OFFICERS—SUFFICIENCY OF COMPLAINT.

In an action against directors of a lead company, which owned 83 per cent. of the capital stock of a trust company, the complaint alleged that the trust company loaned to G., one of its directors, and his son, over $100,000 secured by collateral, consisting of stock the actual value of which was considerably less; that the trust company was liquidated by its officers and liquidating trustees; that G. and his son proposed that the collateral held by the trust company should be surrendered to the lead company and their notes returned to them; that this proposal was accepted by the lead company's directors; that the loans to G. were in violation of statutes limiting the amount of loans to a director without the consent of all the directors; that the loans were made contrary to law with the knowledge of some of the defendants; that G. and his son had other property, which might have been acquired as additional collateral, but that none of the defendants took any steps to collect the loans, but negligently consented to the surrender of the notes for the collateral, damaging the lead company; that on plaintiff's demand the lead company's directors requested the liquidating trustees to sue for the loss sustained, but, they having refused to do so, the lead company's directors refused to take any further action. *Held*, that the complaint did not show negligence in failing to protest against the loans or to demand additional security; it not being sufficiently alleged that defendants knew the loans violated the statute, or knew when they first learned of the loans that they were not good, or that they had any ulterior motive in not endeavoring to induce the trust company to collect the loans or obtain additional collateral.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. ⬳320.]

2. CORPORATIONS ⬳320—ACTIONS—OFFICERS—SUFFICIENCY OF COMPLAINT.

While it was not apparent how the liquidating trustees of the trust company could agree that the collateral securing such loans should be delivered to the lead company, the complaint failed to show any impropriety on the part of the directors of the lead company in accepting this

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

compromise, as otherwise it would have been interested only as a stockholder of the trust company in whatever sum was realized.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. ☜320.]

3. CORPORATIONS ☜320—ACTIONS—OFFICERS—SUFFICIENCY OF COMPLAINT.

The complaint failed to show negligence on the part of the defendants in not taking further proceedings against the officers or directors of the trust company, as the lead company could only have brought a stockholder's action, and it was not alleged that such action would have terminated successfully, nor that the defendants acted in bad faith, or otherwise than for what they believed to be the best interests of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. ☜320.]

4. CORPORATIONS ☜310—LIABILITY OF OFFICERS—ERRORS OF JUDGMENT.

The directors of a corporation are not liable for errors of judgment, where they act without corrupt intent, with reasonable care, and in good faith.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1352–1362; Dec. Dig. ☜310.]

Appeal from Special Term, New York County.

Action by Robert Holmes, individually and as trustee, and others, against Hugh N. Camp and others. From an order overruling a demurrer to the complaint and granting plaintiffs' motion for judgment on the pleadings, defendants Camp and Smith appeal. Reversed, and demurrer sustained.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Henry C. Quinby, of New York City, for appellants.
Edward W. Hatch, of New York City, for respondents.

McLAUGHLIN, J. The plaintiffs are stockholders and the individual defendants are directors of the defendant St. Joseph Lead Company. This action is brought to compel the defendant directors to account for and pay over to the company the amount of losses alleged to have been sustained by it through their negligence. The negligence alleged relates to or is involved in certain transactions of the Farmers' & Miners' Trust Company, a Missouri corporation, since dissolved, of which the Lead Company owned 83 per cent. of the capital stock. In March, 1912, according to the allegations of the complaint, the Trust Company loaned to one Graves, one of its directors, $85,000, and about the same time, for his use and benefit, loaned $22,000 to his son. In July, 1912, it made a further loan to Graves of $6,500, making the aggregate loans to him $113,500. These loans were secured by collateral, consisting of the stock of various corporations, including the Lead Company, the par value of which exceeded the amount of the loans, but the actual value was considerably less, and since the loans were made has steadily decreased, so that the present actual and market value of the collateral does not exceed $45,300, all of which was and is known to the defendant directors.

The complaint alleges that in June, 1913, proceedings were com-

menced for the voluntary dissolution of the Trust Company, which were carried on partly under the supervision of its officers and directors and partly under the supervision of liquidating trustees; that in the course of the liquidation Graves and his son made a written proposal to the liquidating trustees and the Lead Company that the collateral held by the Trust Company to secure the loans should be surrendered to the Lead Company (the majority stockholder of the Trust Company) and the notes returned to Graves and his son; that this proposition was accepted by a vote of the defendant directors of the Lead Company at a meeting held November 6, 1913, and the liquidating trustees thereafter transferred the collateral to the Lead Company and surrendered the notes to Graves and his son, releasing them from liability thereon.

It is further alleged that these loans to Graves were in violation of a statute of Missouri, forbidding a director of a trust company to borrow from the company an amount in excess of 10 per cent. of its paid-up capital and surplus, without the recorded consent of ·a majority of the remaining directors at a regular meeting of the board, and that the loans were made without such consent, and contrary to law, "with the knowledge  *  *  *  of the defendant Parsons and *some or all* of the other defendants," and also in violation of another statute of Missouri, forbidding any incorporated or private bank to loan any individual an amount in excess of 25 per cent. of its paid-up capital, except under certain conditions; that when the loans were made, and for a considerable time thereafter, Graves and his son had other property and securities which might have been acquired by the Trust Company as additional collateral for the loans, but that none of the defendants took any steps to collect the loans or to secure further collateral, but negligently and wrongfully consented to the surrender of the notes in exchange for the collateral, damaging the Trust Company and the Lead Company and its stockholders in the sum of upwards of $69,000.

It is further alleged that, at the demand of the plaintiffs, the directors of the Lead Company requested the liquidating trustees to bring an action to recover the loss sustained by the Trust Company, but they had neglected and refused to do so, on the ground, among others, that the loans had been compromised with the consent of the Lead Company; that the directors of the Lead Company refused to take any further action, notwithstanding the fact that the directors and officers of the Trust Company had property sufficient to pay the loss sustained.

The judgment demanded is that the loss sustained by the Lead Company be determined, and that the defendants account for their negligent acts and pay to it such sum as may be found due.

To this complaint the defendants Camp and Smith demurred on the grounds: (a) That the liquidating trustees of the Trust Company were not made parties; (b) that the directors and officers of the Trust Company were not made parties; and (c) that the complaint did not state facts sufficient to constitute a cause of action against them. The demurrer was overruled, the plaintiffs' motion for judgment on the pleadings granted, and the demurring defendants appeal.

[1] I am of the opinion the demurrer should have been sustained, and the motion for judgment denied. The appellants are directors of only the Lead Company. The principal injury complained of is, not to the Lead Company, but to the Trust Company, and is alleged to have been caused by the negligent and wrongful acts of the latter's officers and directors in connection with the loans to Graves. The directors of the Lead Company did not make these loans, nor were they responsible for them. While it is true the Lead Company owned a controlling interest in the stock of the Trust Company, the management of the latter was in the hands of its own directors and officers. It is not alleged, nor is any claim made, that the directors of the Lead Company were derelict in their duty in the election of the directors of the Trust Company. These directors were, so far as appears, regularly and duly elected, and the management of the business and affairs of the Trust Company was in their hands, and not in the hands of the directors of the Lead Company. The directors of the Lead Company were not required, nor was there any legal obligation imposed upon them, to examine into the loans made by the Trust Company, or to interfere in the management of its business. They could not have interfered simply because loans were made to Graves which were not fully secured. It is fairly to be inferred that Graves was a man of some means, and there is no allegation in the complaint that the defendants had even a suspicion, when they first learned of the loans, that they were not good, or that they had any ulterior motive in not thereafter endeavoring to induce the Trust Company to collect them, or obtain additional collateral.

Nor is there a sufficient allegation that these appellants knew the loans were in violation of the Missouri statute, which prevents a loan to a director in excess of 10 per cent. of the paid-up capital. That statute does not render such loans void or unenforceable, but simply requires the preliminary consent of a majority of the directors. Under the allegations of the complaint, therefore, construing them most favorably to the plaintiffs, I am of the opinion that the appellants were not negligent in failing to protest against the loans or to demand additional security.

[2] Nor does the complaint show any impropriety in the compromise which the directors of the Lead Company voted to accept. The affairs of the Trust Company were then being liquidated, and it is not alleged that Graves and his son, at that time, were able to pay the indebtedness, or any part of it. The compromise proposed was that all the collateral held by the Trust Company to secure the loans should be turned over to the Lead Company and the notes surrendered to Graves. How the liquidating trustees, representing creditors of the Trust Company, could agree with the Lead Company to dispose of the assets of the Trust Company in this way, is not apparent. It is unnecessary to consider that question, since it is not before us, further than to say that the Lead Company certainly received all to which it was entitled. It acquired all the collateral securing the loans, including a considerable amount of its own stock; whereas, it otherwise would have been interested only as a stockholder of the Trust Company in whatever sum was realized from the loans or the collateral put up as

payment for the same. There is nothing to show that this compromise was made in bad faith, and it may have been a very desirable arrangement for the Lead Company to make.

[3] Finally, it is claimed that the directors of the Lead Company were negligent, in that they did not compel proceedings to be brought against the officers or directors of the Trust Company. But that cause of action, if any, was vested in the Trust Company or its liquidating trustees. Such trustees refused to bring an action. All that the directors of the Lead Company could then have done would have been to have brought a stockholder's action, in the name of the Lead Company against the Trust Company. It is not alleged that, had such action been brought, it would have terminated successfully, nor is there any allegation that in refusing to bring such action the directors of the Lead Company acted in bad faith, or except what they believed to be for the best interest of the corporation represented by them. The facts alleged are not sufficient to establish a breach of trust on the part of the directors of the Lead Company in failing to embark upon litigation of this character.

[4] The directors of a corporation are not liable for errors of judgment, where they act without corrupt intent, with reasonable care, and in good faith. People v. Equitable Life Assurance Society, 124 App. Div. 714, 109 N. Y. Supp. 453; Cass v. Realty Securities Co., 148 App. Div. 96, 132 N. Y. Supp. 1074, affirmed 206 N. Y. 649, 99 N. E. 1105. There are no allegations that the directors of the Lead Company did not act in good faith, and, if they erred at all, it was an error of judgment for which they are not liable. The facts pleaded, I think, fail to show any actionable wrong committed by appellants as directors of the Lead Company.

This conclusion renders it unnecessary to pass upon or consider the other two grounds of the demurrer.

The order appealed from, therefore, is reversed, with $10 costs and disbursements, and the demurrer sustained, with $10 costs, with leave to serve an amended complaint upon payment of costs in this court and in the court below. Order filed. All concur.