**In re Stewart S. PEACOCK, Debtor.**

**No. 90 C 07013.**

United States District Court,
N.D. Illinois, E.D.

March 1, 1991.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

On November 21, 1988, Stewart S. Peacock's creditor filed a petition placing him in Chapter 7 bankruptcy. That same day, one of the creditor's attorneys, J.P. Coleman, attempted to serve Peacock. Coleman took the summons to Peacock's place of business (Spaulding & Co., where Peacock served as president) and left it with one of the store employees. Seven months later, Peacock received notice of a hearing set for July 1989. Peacock appeared at the hearing and moved to dismiss for lack of personal jurisdiction. Peacock claimed that because he had not received the summons within 120 days, Federal Rule of Civil Procedure 4(j) mandated dismissal.[1]

On August 11, 1989, the creditors filed an objection to the motion to dismiss, attaching Coleman's affidavit in support. Coleman's affidavit described the attempted service at Peacock's store. According to the affidavit, the attorneys for both sides discussed the impending litigation many times after delivery of the summons. Peacock's attorneys repeatedly assured Coleman that an appearance would be filed. Additionally, Coleman attested that Peacock's attorneys had informed a state court judge that they were representing Peacock in this federal proceeding.[2]

1. Rule 4(j) reads, in relevant part:

    If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.... Fed.R.Civ.P. 4(j).

2. In support of the affidavit, Coleman attached several letters exchanged between the two parties. These letters indicate that the Chapter 7 case against Peacock was at all times treated as a viable and ongoing matter. Coleman also attached an order from Judge Robert L. Sklo-

Before the bankruptcy judge could rule on the motion to dismiss, the Illinois legislature amended the state law relating to exempt property. The new paragraph 12–1006 provides that individual retirement accounts ("IRAs") are exempt from judgment in a bankruptcy action. Ill.Rev.Stat. ch. 110, paras. 12–1006(a), 12–1006(b)(3) (1989). The law became effective on August 30, 1989.

On September 7, 1989, the bankruptcy judge ruled on the motion to dismiss.[3] The judge denied the motion and quashed the original summons, but ordered that an "alias summons"[4] be served on Peacock.[5] Peacock subsequently filed a second motion to dismiss based on substantive law arguments. In an order dated November 30, 1989, the bankruptcy judge denied Peacock's motion and granted an order for relief. Foregoing his right to appeal that order, Peacock filed his schedules in bankruptcy on December 13, 1989. In his first schedule, Peacock failed to exempt his IRAs. Five months later he petitioned the bankruptcy court to amend his schedule.

The bankruptcy judge looked to the clear language of Bankruptcy Code § 522(b)(2)(A) which permits only those exemptions allowed by state law "on the date of the filing of the petition...." 11 U.S.C. § 522(b)(2)(A) (1988). Because the new state law exempting IRAs became effective more than nine months after the filing of the involuntary petition on November 21, 1988, the motion to amend the schedule was denied. Peacock now appeals that decision.

Although the appeal purports to challenge only the order denying leave to amend the schedule, it ultimately aims well beyond that limited goal. Peacock's more ambitious argument is that because he had not originally been served within 120 days the bankruptcy judge was obligated to dismiss the case pursuant to Rule 4(j). Therefore, Peacock continues, the September 7 order denying the motion to dismiss and issuing an alias summons was a "void" order subject to collateral attack at any time. Thus, it is Peacock's position that the filing of the schedules marked the first point at which the bankruptcy court acquired jurisdiction. Because the schedules were filed three months after the change in state law, Peacock contends that § 522(b)(2)(A) would allow him to reap the benefits of the new statute.[6]

■ We reject Peacock's contention that the September 7 order was void. Rule 4(j) only mandates dismissal when service is not made within 120 days after the filing of the complaint and "the party on whose behalf such service was required cannot show good cause why such service was not within that period." We read the bankruptcy judge's September 7 order as an extension of the 120–day period based on good cause. Peacock apparently takes the same view. In his brief he admits that the bankruptcy judge "effectively granted an extension of the 120 day period by authorizing the issuance of an Alias Summons." Brief of Debtor at 9.

■ In any event, it is clear that the bankruptcy judge considered the representations made by Peacock's attorneys to both Coleman and the state court judge in making the good cause determination. The bankruptcy judge apparently concluded that Peacock had lulled his creditor(s) into believing that he had been properly served. Such unseemly conduct has provided good cause to grant an extension of the 120–day

---

dowski of the Circuit Court of Cook County, Illinois. The order makes reference to this case and supports Coleman's testimony that Peacock's attorneys had been retained to handle the matter.

**3.** The judge's order was not a formal opinion. The record contains only a brief summary of the action taken.

**4.** An alias summons is "[a] summons issued when original has not produced its effect be-

cause defective in form or manner of service, and when issued, supersedes the first writ." *Black's Law Dictionary* 66 (5th ed.1979).

**5.** Significantly, Peacock did not appeal the September 7 order.

**6.** Of course, this argument presumes that the schedules in bankruptcy can be deemed the functional equivalent of an involuntary petition under these specific facts—an issue we need not address.

period. *Ditkof v. Owens–Illinois, Inc.,* 114 F.R.D. 104, 105 (E.D.Mich.1987).[7]

Viewed in this light, the September 7 order was nothing more than the smoothing of a procedural bump in the road—a bump created by Peacock's own misrepresentations. As a result, the bankruptcy judge was correct in treating the motion to amend the schedules like any other motion under § 522(b)(2)(A).[8] The bankruptcy judge's decision denying the amendment to the schedules is therefore affirmed. It is so ordered.

---

7. There are plausible arguments as to whether this truly amounts to good cause to grant an extension. Those arguments, if valid, make the order voidable—not void. Peacock does not claim that he is entitled to challenge a voidable order at this late date. The record reveals that Peacock not only failed to appeal the September 7 interlocutory order by way of Bankruptcy Rule 8001(b), but that he also failed to appeal the November 30 order of relief under Bankruptcy Rule 8001(a). The 10-day time period in which to file a bankruptcy appeal is jurisdictional under Bankruptcy Rule 8002(a). *In re Nucorp Energy, Inc.,* 812 F.2d 582, 584 (9th Cir. 1987). Therefore, the time for debate on the merits of the decision has long since passed.

8. Peacock concedes that the bankruptcy judge's decision would be proper in an "ordinary case." In his brief, he admits that he

does not argue with the Bankruptcy Court's discussion of the proper application of Section 522(b)(2)(A) of the Bankruptcy Code.... In a normal case where summons is properly and timely served, the holding of the Bankruptcy Judge is absolutely correct. That court is incorrect, however, in finding that those cases control in this case where the original Summons never was served on the Debtor and where the Bankruptcy Court itself *ignored the mandate of Rule 4(j),* thus making void all acts and doings of that Court until the voluntary submission by the Debtor to the jurisdiction of that Court when he filed his Schedules on December 13, 1989, some three and one-half months after the exemption became available to him the change in the state laws. Brief of Debtor at 12 (emphasis added).

Given our conclusion that the bankruptcy judge did not ignore Rule 4(j), this is, in fact, a "normal case" and therefore § 522(b)(2)(A) was properly applied.